## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Baltimore)

| | |
|---|---|
| SINCLAIR BROADCASTING GROUP, INC., a Maryland Corporation, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No.: 1:14-cv-02614-CCB |
| COLOUR BASIS, LLC, a Texas LLC and CHRISTI SCHREIBER, an individual. ) ) ) | |
| Defendants. ) | |
| ----------------------------------------------------- | |
| COLOUR BASIS, LLC, a Texas LLC ) ) | |
| Counterclaimant, ) ) | |
| v. ) ) | **ANSWER, AFFIRMATIVE DEFENSES,** |
| SINCLAIR BROADCASTING GROUP, INC., a Maryland Corporation, SAMANTHA DINGES, an individual, SCOTT LIVINGSTON, an individual, and DOES 1 through 20, ) ) ) ) ) ) | **AND COUNTERCLAIM** |
| Counterclaim/Third-Party Defendants. ) | |

## DEFENDANTS' ANSWER TO SINCLAIR BROADCASTING GROUP, INC.'S FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

COME NOW, Colour Basis, LLC ("Colour Basis") and Christi Schreiber

("Schreiber") (collectively, "Defendants") and Answer the Complaint filed by Sinclair

Broadcasting Group, Inc. ("SGB" or "Plaintiff") as follows:

## THE PARTIES

1.      Defendants are without sufficient information to either admit or deny the

allegations set forth in this paragraph.

2.      Colour Basis admits that it is a Texas LLC with a principle place of business in Fort Worth, Texas.

3.      Schreiber admits that she is the President and CEO of Colour Basis and resides in Fort Worth, Texas.

## JURISDICTION AND VENUE

4.      Defendants do not dispute that this Court has jurisdiction over this case but deny that Plaintiff has a viable cause of action.

5.      Defendants do not dispute that this Court has jurisdiction over this case but deny that Plaintiff has a viable cause of action.

6.      Defendants do not dispute venue but deny that Plaintiff has a viable cause of action.

7.      Defendants do not dispute that this Court has jurisdiction over this case but deny that Plaintiff has a viable cause of action.

## FACTUAL AVERMENTS

8.      Defendants admit that beginning in 2011, Colour Basis was hired by SBG and its affiliates as an independent contractor to provide consulting services to on-camera talent at various SBG-owned broadcast stations.  Over the next two years, Colour Basis was retained by SBG and its affiliates on numerous occasions to provide its consulting services to many other SBG-owned broadcast stations.  Colour Basis admits that each engagement was done on a case-by-case basis.

9.      Defendants are without sufficient information to either admit or deny the allegations set forth in this paragraph.

10.    Defendants are without sufficient information to either admit or deny the allegations set forth in this paragraph.

11.    Defendants admit that on March 29, 2012, Scott Livingston ("Livingston") contacted Schreiber praising her work, requesting additional work for a station in Oklahoma, and stating that he "would like to discuss a possible group deal for 2013."

12.    Defendants admit that discussions continued regarding the use of Defendants' services in other markets served by other SBG subsidiaries and that Colour Basis continued to work for SBG-owned companies during that time.

13.    Defendants admit that in or around October 2012, SBG and Colour Basis discussed entering into a multi-year consulting deal, which had been raised by SBG several months before, wherein Colour Basis would be retained to provide consulting services to various SBG-owned stations – forty stations at the time – on a recurring basis.  As a part of the multi-year consulting deal, SBG requested that Colour Basis create a written "Style Guide."

14.    Defendants admit that continuing through fall of 2012 and spring of 2013, SBG and Colour Basis discussed the terms of the multi-year consulting deal, which included creating the Style Guide.

15.    Defendants admit that in December 2012, SBG invited Schreiber to present to a conference in Baltimore in January 2013 for news directors, corporate executives and general managers for various SBG-owned stations.

16.    Defendants admit that in January 2013, Schreiber participated in the conference and gave an hour presentation to news directors, corporate executives and

general managers for various SBG-owned stations, which included a PowerPoint presentation pertaining to dress and appearance issues for on-air talent.

17.     Defendants admit that in January and February, 2013, Schreiber informed SBG, including Livingston, that she was working on the Style Guide.  Though the final terms for the fees and licensing had not yet been finalized, it was understood by both SBG and Colour Basis that the Style Guide was to contain Colour Basis' detailed, proprietary appearance consulting information and that SBG would pay an initial fee for the creation of the work and that any additional copies would be licensed by SBG on a per-copy fee, non-exclusive basis.  Further, it was understood that the Style Guide was only being created and provided in connection with a multi-year consulting deal between Colour Basis and SBG.

18.     Defendants admit that throughout 2012 and 2013, Colour Basis was working with various SBG-owned stations and that those stations paid Colour Basis directly.

19.     Defendants admit that in or around March, 2013, Schreiber advised Livingston through emails and phone discussions that Colour Basis proposed and relied upon as part of a multi-year consulting deal a $25,000 fee to create the Style Guide, which would include 400 licensed printed copies of the Style Guide with an option to purchase additional copies at an  additional fee to be determined, and that the Style Guide was offered as part of, in reliance on, and in expectation of the multi-year consulting agreement.

20.     Defendants admit that there were telephone discussions in March, 2013 between Livingston and Schreiber to discuss the specific terms of the deal and admit that Livingston proposed a $15,000 rather than $25,000 as the fee for a PDF only/no hard copy limited license as part of a comprehensive multi-year agreement.  Defendants deny that

Livingston ever stated that the SBG proposal included that SBG would own the Style Guide or be entitled to "share it with its subsidiaries as it saw appropriate."

21.     Defendants admit that on April 5, 2013, Schreiber sent to Livingston a copy of the Style Guide for review in a password protected, print disabled PDF that included a copyright notice on every page identifying Colour Basis as the owner of the Style Guide. Defendants admit that Livingston suggested slight modifications to the document. Defendants admit that on April 25, 2013, Schreiber sent to Livingston a copy of the Style Guide with revisions again in a password protected, print disabled PDF format that included a copyright notice on every page identifying Colour Basis as the owner of the Style Guide.

22.     Defendants admit that at the end of April, 2013, Defendants sent SBG an invoice for $15,000 and that SBG paid this invoice.

23.     Defendants admit that on June 3, 2013, Schreiber sent to Livingston a final copy of the Style Guide in a password protected, print disabled PDF format that included a copyright notice on every page identifying Colour Basis as the one of the Style Guide.

24.     Defendants admit there is an introduction to the Style Guide as quoted in this paragraph, but deny that it established the intent of Defendants to license the use of the Style Guide throughout the SBG operations and stations.

25.     Defendants admit there is a copyright notice in the Style Guide indicating Colour Basis as the sole owner of the Style Guide and that it included Colour Basis' phone number so that Colour Basis could be contacted by the respective SBG stations and talent services as part of the parties' multi-year consulting agreement.

26.     Defendants are without sufficient information to either admit or deny the allegations set forth in this paragraph.

27.     Defendants are without sufficient information to either admit or deny the allegations set forth in this paragraph.

28.     Defendants admit that in late June, 2013, two weeks after having procured a digital copy of the Style Guide, SBG contacted Colour Basis and explained that it had hired a full-time employee, Defendant Dinges who happens to be SBG's CEO's stepdaughter, to utilize Colour Basis's Style Guide to consult with on-camera talent and that there would be no multi-year consulting deal, contrary to SBG's and Livingston's prior agreement.

29.     Defendants admit that they did not object to the use of the Style Guide by SBG, its employees, and subsidiaries until Defendants became fully aware of the breaches and fraudulent conduct of the Defendants.

30.     Denied.

31.     Denied

32.     Defendants deny that Schreiber has a clothing line of any kind.  Defendants admit that they brought sample clothes and makeup with them as a part of their consulting services to assist the talent in making proper wardrobe and makeup selections. Giving wardrobe and makeup advice was an integral part of Defendants' consulting services which would be impossible to provide without having examples on hand.

33.     As a convenience to SBG's talent, who regularly requested that Defendants sell them the examples which Defendants brought with them, Defendants acquiesced to SBG talent's and station management's requests and sold the examples of proper clothing and makeup which they had brought with them.  SBG was not only aware that Defendants brought clothes and makeup and sold them to the SBG talent, but endorsed and encouraged

the practice. The sale of the examples was a regular practice and contributed to the earnings of Defendants which were lost as a result of Plaintiff's improper conduct.

34.     Denied.

35.     Defendants admit that on July 2, 2014, Defendants filed a Registration with the U.S. Copyright Office for the Style Guide, which resulted in Registration No. TX0007857557, and that Colour Basis is the owner of the copyright and Registration in the Style Guide.

36.     Defendants admit that they believe that SBG is required to license any use of the Style Guide and that SBG has violated Colour Basis' copyright and the agreement amongst the parties, and that Defendants have informed SBG of this belief.

37.     Admitted.

38.     Admitted.

39.     Admitted.

## COUNT I – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

40.     Defendants incorporate by reference and reallege each and every response contained in its responses to the prior paragraphs herein.

41.     Denied.

42.     Defendants do not dispute that this Court has jurisdiction over this case but deny that Plaintiff has a viable cause of action.

43.     Defendants are not required to respond to this paragraph as simply stating legal conclusions without basis.  To the extent Defendants are required to respond, they deny that SBG is entitled to any of the requested relief.

44.     Defendants are not required to respond to this paragraph as simply stating legal conclusions without basis.  To the extent Defendants are required to respond, they deny that SBG is entitled to any of the requested relief.

## COUNT II – FRAUD
### (In the Alternative to Count I)

45.     Defendants incorporate by reference and reallege each and every response contained in its responses to the prior paragraphs herein.

46.     Denied.

47.     Denied.

48.     Denied.

49.     Denied.

50.     Denied.

51.     Defendants are without sufficient information to either admit or deny the allegations set forth in this paragraph as relates to Livingston's and SBG's action. Otherwise, denied.

52.     Denied.

## COUNT III – NEGLIGENT MISREPRESENTATION
### (In the Alternative to Counts I and II)

53.     Defendants incorporate by reference and reallege each and every response contained in its responses to the prior paragraphs herein.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     Denied.

59.     Defendants are without sufficient information to either admit or deny the allegations set forth in this paragraph as relates to Livingston's and SBG's action. Otherwise, denied.

60.     Denied.


WHEREFORE, Defendants pray that a judgment be entered as follows:

A.     That SBG's claims be dismissed with prejudice;

B.     That SBG's claim of any ownership in the Style Guide be denied and that Colour Basis is the sole owner of the copyright in the Style Guide;

C.     That SBG has infringed Colour Basis' copyright by copying and distributing copies of the Style Guide without proper license from Colour Basis;

D.     That SBG has violated the license agreement between SBG and Colour Basis by exceeding the scope of the limited license agreement initially granted and that any license granted by Colour Basis to SBG has been terminated;

E.     That SBG has engaged in fraudulent inducement;

F.     That SBG has engaged in unfair competition under federal and Maryland law;

G.     That SBG pay Defendants' damages as a result of its actions, including actual, compensatory and punitive damages, including without limitation, lost licensing fees, lost income, and SBG's unlawful gains to include no less than $2.3 million in lost income and $4,600,000 in punitive damages;

H.     That SBG pay Defendants' damages as a result of its actions, including statutory damages of $150,000 for each copyright infringement that began after July 2, 2014;

I.     That SBG is permanently enjoined from its unauthorized copying, use or creation of derivative works of the Style Guide;

J.     That SBG is permanently enjoined from further acts of unfair competition;

K.     That SBG pay Defendants' attorneys' fees and costs;

L.     Such other and further relief as the Court may deem just and equitable.

## AFFIRMATIVE DEFENSES

Without admitting any allegation in the Complaint, Defendants assert the following affirmative defenses:

1.     As to each claim for relief, Plaintiff has failed to state a claim upon which relief can be granted.

2.     As to each claim for relief, Defendant Schreiber acted solely in her capacity as an employee of Defendant Colour Basis and Plaintiff has failed to articulate any basis for individual liability against her.

3.     Any claim by Plaintiff of any ownership interest in the Style Guide is barred because Colour Basis is the owner of the copyright in the Style Guide, as admitted by Plaintiff's own allegations that Colour Basis was an independent contractor and that there was no written assignment of or exclusive license in the copyright from Colour Basis to Plaintiff.

4.     Plaintiff's claims are barred by the doctrine of unclean hands.

10

Defendants reserve the right to assert further defenses as may be revealed during discovery, including but not limited to defenses based upon after-acquired evidence.


## COLOUR BASIS, LLC'S COUNTERCLAIM ADVERSE SINCLAIR BROADCAST GROUP, INC., SAMATHA DINGES AND SCOTT LIVINGSTON

Counterclaimant Colour Basis, LLC ("Colour Basis" or "Counterclaimant") brings this action against Counterclaim Defendant Sinclair Broadcasting Group, Inc. ("SBG"), Third Party Defendant Samantha Dinges ("Dinges") and Third Party Defendant Scott Livingston ("Livingston") (collectively, "Counterclaim Defendants").

## NATURE OF THIS ACTION

1.      Colour Basis is a small, three person media appearance consulting company, specializing in on-camera TV talent make-up application, wardrobe selection and personal grooming and style consulting. Colour Basis typically provides these services directly to the on-camera talent through in-person consulting sessions.  SBG is a massive television broadcasting conglomerate that, according to its own public website, currently owns and operates 164 television stations in 79 different markets in the United States.

2.      This action concerns Counterclaim Defendants' fraudulent inducement of Colour Basis to create a written work disclosing Colour Basis' proprietary information, the Colour Basis Style Guide ("Style Guide"), with false promises to Colour Basis of a multi-year consulting deal with forty stations and licensing fees.  Instead of following through with their representations, Counterclaim Defendants infringed on Colour Basis' copyright by creating and distributing unauthorized and unlicensed reproductions of the Style Guide for use by its employees; reneged on the multi-year consulting deal; and froze Colour Basis out of any future work with SBG or its related companies.

11

## PARTIES

3.      Colour Basis is a Texas limited liability company with its principal place of business located in Fort Worth, Texas.

4.      SBG is a Maryland corporation, headquartered in Baltimore, Maryland.

5.      Dinges is an individual, who upon information and belief, resides in Baltimore, Maryland.  Upon information and belief, Dinges is employed by SBG, and is the stepdaughter of the President, CEO and Chairman of the Board of SBG, David Smith.

6.      Livingston is an individual, who upon information and belief, resides in Baltimore, Maryland.  Upon information and belief, Livingston is employed by SBG in the position of Vice President, News.

7.      The true names and capacities of Does 1 through 20, whether individual, corporate, or otherwise, are unknown to Colour Basis, who therefore sues them by fictitious names.  Upon information and belief, Does 1 through 20, are in some manner responsible, liable, and/or obligated to Colour Basis in connection with the events and occurrences alleged herein.  As soon as the true names and capacities of any of Third Party Defendant Does 1 through 20 have been ascertained, Colour Basis will amend this Complaint accordingly.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction under 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

9.      This Court has personal jurisdiction over Counterclaim Defendants because they are incorporated and/or resident in Maryland and this district.

10.      Venue lies in this District under 28 U.S.C. §§ 1391(b) and (c) because Counterclaim Defendants are incorporated and/or resident in Maryland and this district.

## GENERAL ALLEGATIONS

11.     Beginning in 2011, Colour Basis was hired by SBG to provide consulting services to on-camera talent at various SBG-owned broadcast stations.  Over the next two years, Colour Basis was retained by SBG on numerous occasions to provide these consulting services to many other SBG-owned broadcast stations.

12.     Beginning in 2012, SBG and Colour Basis discussed entering into a multi-year consulting deal, wherein Colour Basis would be retained to provide consulting services to various SBG-owned stations on a recurring basis.  As a part of this proposed multi-year consulting deal, SBG requested that Colour Basis create a written "Style Guide" to be utilized by Colour Basis in its consulting sessions with SBG.  These communications were between Defendant Livingston and Christi Schreiber, President and CEO of Colour Basis ("Schreiber").  The communications were conducted orally and in writing.

13.     It was understood by both SBG and Colour Basis that the Style Guide was to contain Colour Basis' detailed, proprietary appearance consulting information and that SBG would pay an initial fee for the creation of the work and that any additional copies would be licensed by SBG on a per-copy fee, non-exclusive basis.

14.     Colour Basis was reluctant to create the Style Guide and only agreed to create the Style Guide in reliance on, anticipation of, and in connection with, the proposed multi-year consulting deal between Colour Basis and SBG, and Colour Basis would not have otherwise created the Style Guide.

15.     In January and February, 2013, Schreiber informed SBG, including Livingston, that she was working on the Style Guide.  Though the final terms for the fees and licensing had not been agreed upon, it was understood by both SBG and Colour Basis

that the Style Guide was to contain Colour Basis' detailed, proprietary appearance consulting information and that SBG would pay an initial fee for the creation of the work and that any additional copies would be licensed by SBG on a per-copy, non-exclusive basis.  Further, it was expressed to SBG that the Style Guide was being created as part of, in reliance on, anticipation of, and in connection with, the proposed multi-year consulting deal between Colour Basis and SBG.

16.     In March, 2013, Schreiber advised Livingston through emails and phone discussions that Colour Basis proposed $25,000 as a fee to create the Style Guide, which would include 400 copies of the Style Guide and license for those 400 copies, that additional copies would require an additional license fee to be determined, and that this was all offered as part of, in reliance on, and in expectation of the multi-year consulting deal.

17.     Thereafter, also in March, 2013, there were telephone conversations between Livingston and Schreiber to discuss the terms of the deal during which Livingston proposed $15,000 rather than $25,000 as the fee, to include 400 PDF only/no hard copy copies of the Style Guide and license for those 400 PDF only/no hard copy copies, whereby additional copies would require an additional license fee to be determined, and this was all offered as part of the multi-year consulting deal.

18.     On April 5, 2013, Schreiber sent to Livingston a copy of the Style Guide for review in a password protected print disabled PDF that included a copyright notice on every page identifying Colour Basis as the copyright owner, to which Livingston responded that it looked great but requested a few small revisions.  Then, on April 25, 2013, Schreiber sent to Livingston a copy of the Style Guide with revisions, also in a password protected print

disabled PDF that included a copyright notice on every page identifying Colour Basis as the copyright owner.

19.     At the end of April, 2013, Colour Basis sent an invoice to SBG in the amount of $15,000 for the fee for the initial creation of the Style Guide and the right to distribute 400 PDF only/no hard copy copies internally.  This invoice was paid by SBG. However, the $15,000 charge did not even cover Colour Basis's costs in creating the Style Guide.  As Colour Basis explained to SBG at the time, Colour Basis expected to recoup its direct costs in creating the Style Guide through licensing fees for additional copies of the Style Guide as well as from the consulting fees generated by the expected multi-year consulting deal.

20.     On June 3, 2013, Schreiber sent to Livingston a final copy of the Style Guide in a password protected print disabled PDF that included a copyright notice on every page identifying Colour Basis as the copyright owner.

21.     Negotiations regarding the proposed multi-year consulting deal continued through June, 2013.  However, in late June 2013, only after having procured under false pretenses the PDF copy of the Style Guide, Livingston contacted Colour Basis and explained that it had hired a full-time employee to utilize Colour Basis' Style Guide to consult with on-camera talent and that there would be no multi-year consulting deal contrary to SBG's and Livingston's agreement.  Shortly thereafter, SBG ceased hiring Colour Basis for any in-person consulting work.

22.     Upon information and belief, the full-time employee hired by SBG is Dinges.

23.     Upon information and belief, Dinges has committed willful infringement of

15

Colour Basis' copyrights by, *inter alia*, the unauthorized copying, creation of hard copies and distribution of unauthorized copies of the Style Guide.

24.     Upon information and belief, Dinges has willfully removed the password protection and print disabling technological measures that controlled access to the copyright protected Style Guide thus circumventing the copyright technological measures for commercial gain in violation of 17 U.S.C. §1201.

25.     Upon information and belief, SBG has committed willful copyright infringement by, *inter alia*, printing numerous unlicensed hard-copies of the Style Guide and are distributing them to SBG employees and distributing many more PDF copies of the Style Guide, all in willful violation of Colour Basis's copyrights.

26.     Upon information and belief, SBG has removed the password protection and print disabling technological measures that controlled access to the copyright protected Style Guide, thus circumventing the copyright technological measures for commercial gain in violation of 17 U.S.C. §1201.

27.     Upon information and belief, Livingston has committed willful copyright infringement by, *inter alia*, printing numerous unlicensed hard-copies of the Style Guide and is distributing them and PDF copies to SBG employees in willful violation of Colour Basis's copyrights.

28.     Upon information and belief, Livingston has removed the password protection and print disabling technological measures that controlled access to the copyright protected Style Guide, thus circumventing the copyright technological measures for commercial gain in violation of 17 U.S.C. §1201.

29.     SBG, Livingston and Dinges are also utilizing the copyrighted, proprietary

material contained within the Style Guide, which Colour Basis accumulated and developed through decades of experience, at SBG national sales meetings and other internal training and consulting sessions, without license or authorization from Colour Basis.

30.     Colour Basis has expressed to Counterclaim Defendants that Colour Basis owns the copyright in the Style Guide and that Counterclaim Defendants' copying and distribution of those copies is unauthorized and infringes Colour Basis' copyright.  Colour Basis has terminated any implied license to SBG for cause and based on information and belief understands that SBG has continued to use and provide copies of the copyrighted material post termination.

### FIRST CAUSE OF ACTION
### (Copyright Infringement – Against All Counterclaim Defendants)

31.     Colour Basis hereby realleges and incorporates by reference each of the allegations from the foregoing paragraphs as if fully stated herein.

32.     Colour Basis is the author and owner of the copyright in the Style Guide. Prior to bringing this lawsuit, Colour Basis registered its copyright in the Style Guide with the United States Copyright Office (TX0007857557: 7/2/2014).

33.     By virtue of the facts alleged above, Counterclaim Defendants copied, printed, presented, used and distributed the Style Guide outside the scope of any license granted and as a result of the material breach of and subsequent termination of the implied license, Counterclaim Defendants are willfully infringing Colour Basis' copyrights by continuing to copy, print, present, use, distribute, and create derivatives of the Style Guide.

34.     On information and belief, Counterclaim Defendants willfully infringed and their infringement was done with actual or constructive knowledge that such conduct was infringing on Colour Basis's copyright interests.

35.     By reason of Counterclaim Defendants' infringement, Colour Basis has sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in the copyrighted work.

36.     Further irreparable harm to Colour Basis is imminent as a result of Counterclaim Defendants' conduct, and Colour Basis is without an adequate remedy at law. Colour Basis is therefore entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining Counterclaim Defendants, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Counterclaim Defendants from engaging in further acts of copyright infringement.

37.     Due to Counterclaim Defendants' continued and new acts of willful copyright infringement, they have obtained direct and indirect profits they would not otherwise have realized but for the infringement.  As such, Colour Basis is entitled to actual damages, including Colour Basis' lost profits and disgorgement of Counterclaim Defendants' profits directly and indirectly attributable to Counterclaim Defendants' infringement of the Style Guide in an amount to be established at trial.  Furthermore, for any acts of infringement by Counterclaim Defendants that began after July 2, 2014, Colour Basis is entitled to statutory damages of $150,000 per infringement, as well as costs and attorneys' fees under 17 U.S.C. §§ 504, 505.

## SECOND CAUSE OF ACTION
### (Circumvention of Copyright Protection System – Against All Counterclaim Defendants)

38.     Colour Basis hereby realleges and incorporates by reference each of the allegations from the foregoing paragraphs as if fully stated herein.

39.     By virtue of the facts alleged above and as a result of the improper

circumvention of copyright protection systems, Counterclaim Defendants willfully violated 17 U.S. C. §1201.

40.     On information and belief, Counterclaim Defendants willfully circumvented Colour Basis's copyright protection system and their infringement was done with actual or constructive knowledge that such conduct was infringing on Colour Basis' copyright interests.

41.     By reason of Counterclaim Defendants' circumvention and infringement, Colour Basis has sustained and will continue to sustain substantial injury, loss, and damage.

42.     Further irreparable harm to Colour Basis is imminent as a result of Counterclaim Defendants' conduct, and Colour Basis is without an adequate remedy at law. Colour Basis is therefore entitled to an injunction, in accordance with 17 U.S.C. § 502, restraining Counterclaim Defendants, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Counterclaim Defendants from engaging in further acts of circumvention and copyright infringement.

43.     Colour Basis is entitled to statutory damages of $2,500 per infringement, as well as costs and attorneys' fees under 17 U.S.C. §§ 1203 and for referral to the U.S. Attorney for criminal penalties under §1204.

### THIRD CAUSE OF ACTION
### (Fraudulent Inducement – Against SBG and Livingston)

44.     Colour Basis hereby realleges and incorporates by reference each of the allegations from the foregoing paragraphs as if fully stated herein.

45.     Counterclaim Defendants SBG and Livingston made false representations to Colour Basis that they intended to sign Colour Basis on for a multi-year consulting deal worth over approximately $2.3 million (based on the number of Sinclair stations at the time,

19

Colour Basis' normal billing rate and the standard number of visits and the sale of product) in order to induce Colour Basis to create the Style Guide.  In 2012, SBG and Livingston represented to Colour Basis that SBG was interested in entering into a multi-year consulting deal for Colour Basis' consulting services.  In connection with this planned multi-year consulting deal, SBG and Livingston requested that Colour Basis create the Style Guide for SBG to license for an initial $15,000 fee to include 400 PDF only/no hard copy copies and for an additional license fee for any copies created thereafter in conjunction with Colour Basis' consulting contemplated in the multi-year consulting deal.

46.     Upon information and belief, SBG's and Livingston's false promises to engage Colour Basis in a multi-year consulting contract, which included creation of the Style Guide, were made for the purpose of defrauding Colour Basis.

47.     Colour Basis relied on SBG's and Livingston's false promises and misrepresentations and had the right to rely on them.   Colour Basis, at the time that such representations were made, did not know, and had no reason to know that the representations were false, and instead, believed them to be true.  In reasonable reliance on SBG's and Livingston's representations and the parties' verbal and written discussions regarding the deal points of the multi-year consulting deal, Colour Basis created the Style Guide and delivered a print disabled, password protected PDF copy to SBG and Livingston that included a copyright notice on every page identifying Colour Basis as the copyright owner.  Colour Basis would not have agreed to create the Style Guide, particularly at a loss, were it not for the false promise that it was being created as part of a multi-year consulting contract with over forty stations.  Colour Basis' reliance on the aforesaid misrepresentations was reasonable and justified.  Colour Basis did not possess any information that would lead

it to believe that SBG's and Livingston's representations were false.

48.     Shortly after delivering the Style Guide to SBG, SBG informed Colour Basis that there would be no multi-year consulting deal and then ceased working with Colour Basis at all.  On information and belief, SBG never intended to enter into the multi-year consulting deal with Colour Basis and SBG and Livingston knew their representations as to any such deal were false and fraudulent and/or made recklessly and without regard for the truth at the time that they were made for the purpose of inducing Colour Basis to rely thereon to its detriment and create and deliver the Style Guide.  Upon information and belief, while negotiating with Colour Basis for the multi-year consulting deal and Style Guide, Counterclaim Defendants SBG and Livingston were in the process of hiring SBG's CEO's stepdaughter, Dinges, and they had no present intent to perform on their promise to engage in a multi-year consulting deal with Colour Basis.

49.     Colour Basis has suffered compensable injury resulting from the SBG's and Livingston's false promises and misrepresentations.  SBG and Livingston are liable for any loss or damages, subject to proof, suffered by Colour Basis as a direct and proximate result of SBG's and Livingston's acts and omissions alleged herein.  Colour Basis cannot ascertain at this time the full nature, extent or amount of damages suffered as a result of SBG's and Livingston's conduct, but has calculated that a consulting agreement with the forty stations would have resulted in approximately $2.3 million in income over three years.

50.     Furthermore, SBG's and Livingston's conduct as described herein was done recklessly and/or maliciously with conscious disregard of the rights of Colour Basis, entitling Colour Basis to an award of punitive damages to be determined at trial, but no less than $4,600,000.

## FOURTH CAUSE OF ACTION
### (Unfair Competition – Against Counterclaim Defendants)

51.     Colour Basis hereby realleges and incorporates by reference each of the allegations from the foregoing as if fully stated herein.

52.     Counterclaim Defendants' actions constitute fraud, deceit, trickery, and unfair methods of competition and have damaged and jeopardized Colour Basis' business.

53.     Colour Basis created the Style Guide and the information contained therein through extensive time, labor, skill and money, and based on many years of experience and expertise developed over a career.

54.     Counterclaim Defendants have used or willfully used, and continue to use or willfully use, Colour Basis's Style Guide in competition with Colour Basis, thereby gaining a special advantage in that competition because Counterclaim Defendants are burdened with little or none of the expense incurred by Colour Basis.

55.     Counterclaim Defendants falsely induced Colour Basis to create the Style Guide as part of a multi-year consulting contract to be used in connection with Colour Basis' consulting with SBG.  However, Defendant SBG instead hired its CEO's stepdaughter, Dinges, who upon information and belief, is inexperienced in television news and image consulting and would have been incapable of the required tasks without the proprietary information provided in the Style Guide.

56.     By convincing Colour Basis to share its proprietary information in the Style Guide, under false pretenses and misrepresentations, Counterclaim Defendants were able to steal that proprietary information and reuse it without Colour Basis' corresponding consulting services, and unfairly compete with Colour Basis.

22

57.     Colour Basis has incurred, and will continue to incur, commercial damage as a result of Counterclaim Defendants' misconduct.  Accordingly, Colour Basis seeks an award of actual and/or compensatory damages in an amount to be determined at trial, but no less than the $2.3 million in income that Colour Basis would have earned through a consulting agreement and sale of products with the forty stations over three years, and interest thereon.

58.     Additionally, Colour Basis seeks an award of punitive damages in an amount to be determined at trial, but no less than $4,600,000, because of the harm resulting from Counterclaim Defendants' willful, fraudulent, malicious and/or grossly negligent misconduct.

59.     Further irreparable harm to Colour Basis is imminent as a result of Counterclaim Defendants' conduct, and Colour Basis is without an adequate remedy at law. Colour Basis is therefore entitled to an injunction restraining Counterclaim Defendants, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Counterclaim Defendants from engaging in further acts of unfair competition.

## REQUEST FOR JURY TRIAL

Colour Basis respectfully requests a jury trial on all issues for which a jury trial is permissible.

## REQUEST FOR JUDGMENT AND RELIEF

Colour Basis requests judgment and relief against Counterclaim Defendants as follows:

1.     That Colour Basis is the owner of the copyright in the Style Guide;

2.     That Counterclaim Defendants have willfully infringed Colour Basis'

copyright by copying and distributing copies of the Style Guide without proper license from Colour Basis;

3.  That Counterclaim Defendants have violated any license agreement between SBG and Colour Basis by exceeding the scope of the license agreement and that any license granted by Colour Basis to SBG has been terminated;

4.  That Counterclaim Defendants have willfully engaged in the circumvention of copyright protection systems in violation of 17 U.S.C. §1201;

5.  That Counterclaim Defendants SBG and Livingston have engaged in fraudulent inducement;

5.  That Counterclaim Defendants have engaged in unfair competition under federal and Maryland law;

6.  That Counterclaim Defendants pay Colour Basis damages as a result of Counterclaim Defendants' actions, including actual, compensatory and punitive damages, including without limitation, lost licensing fees, lost income, and Counterclaim Defendants' unlawful gains, to include no less than $2.3 million in lost income and $4,600,000 in punitive damages;

7.  That Counterclaim Defendants pay Colour Basis damages as a result of Counterclaim Defendants' actions, including statutory damages of $150,000 for each copyright infringements that began after July 2, 2014;

8.  That Counterclaim Defendants as a result of their actions, pay Colour Basis actual damages and/or statutory damages for Counterclaim Defendants' violations of 17 U.S.C. §1201;

9.  That Counterclaim Defendants are permanently enjoined from their

unauthorized copying, distribution and use of the Style Guide;

10.    That Counterclaim Defendants are permanently enjoined from further acts of

unfair competition;

11.    That Counterclaim Defendants pay Colour Basis' attorneys' fees and costs;

12.    Such other and further relief as the Court may deem just and equitable.

October 17, 2014                   Respectfully submitted,

/s/ Joshua J. Kaufman _____
Joshua J. Kaufman
Meaghan H. Kent *(pro hac vice to be filed)*
VENABLE, LLP
575 7th Street, N.W.
Washington, D.C.  20004
(202) 344-8538
(202) 344-8300 (FAX)
jjkaufman@venable.com
mhkent@venable.com

Craig A. Thompson
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, MD 21202
(410) 244-7400
(410) 244-7742 (FAX)
cathompson@venable.com

*Counsel for Defendants Colour Basis, LLC and Christi Schreiber*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2014, Defendants' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM was served on the following individual(s) who is/are counsel for Plaintiffs via the Court's ECF system, which sent Notices of Electronic Filing:

Francis R. Laws, Esquire
Margaret L. Argent, Esquire
Thomas & Libowitz, P.A.
100 Light Street, Suite 1100
Baltimore, MD 21202-1053

Respectfully submitted,

_____/s/ Joshua J. Kaufman_____