## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | : | |
| SINCLAIR BROADCAST GROUP, INC. | : | |
| | : | |
| v. | : | Civil No. CCB-14-2614 |
| | : | |
| COLOUR BASIS, LLC | : | |
| | : | |

## <u>MEMORANDUM</u>

Sinclair Broadcast Group, Inc. ("SBG") has brought a declaratory judgment action against Colour Basis, LLC ("CB") and Christi Schreiber (collectively, "the defendants" or "counterclaimants"), requesting, *inter alia*, that the court find that SBG has not infringed CB's copyright. CB and Schreiber brought counterclaims against SBG, Scott Livingston, and Samantha Dinges (collectively, "the counter-defendants"), alleging copyright infringement, circumvention of copyright protection systems, fraudulent inducement, and unfair competition. The counter-defendants subsequently sought summary judgment. Oral argument was heard on June 21, 2016. On June 29, 2016, the court granted in part and denied in part the counter-defendants' motion for summary judgment.[1] (June 29 Mem., ECF No. 75; June 29 Order, ECF No. 76.) The counterclaimants have moved to reconsider the portions of that opinion in which I granted the counter-defendants' motion for summary judgment as to the counterclaimants' entitlement to SBG's profits attributable to any alleged copyright infringement, and the counterclaimants' fraudulent inducement claim. (Mot. Recons., ECF No. 79.) The motion has been fully briefed and no hearing is necessary to its resolution. See Local Rule 105.6 (D. Md. 2016). For the reasons that follow, the motion for reconsideration, including the counterclaimants' requests for alternative relief, will be denied.

---

[1] The court will assume familiarity with this case. More detailed information can be found in the court's previous opinion of which the counterclaimants are requesting reconsideration.

**STANDARD OF REVIEW**

Where the entry of partial summary judgment fails to resolve all claims in a suit, Federal Rule of Civil Procedure 54(b) governs a motion to reconsider an interlocutory order. *See Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003). The district court "retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted." *Id.* Although the Fourth Circuit has not identified the precise standard for resolving such a motion, courts frequently look to the standards applicable to motions under Rules 59(e) or 60(b) for guidance. *See Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 480 (D. Md. 2013). Courts generally will reconsider an interlocutory order in the following situations: "(1) there has been an intervening change in controlling law; (2) there is additional evidence that was not previously available; or (3) the prior decision was based on clear error or would work manifest injustice." *Id.* at 481 (quoting *Akeva, LLC v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565-66 (M.D.N.C. 2005)). Because CB and Schreiber point to no change in the law or any new evidence, their motion depends on proof of "clear error" or "manifest injustice." Their motion also should "not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Tepeyac v. Montgomery Cty.*, 5 F. Supp. 3d 745, 770 (D. Md. 2014) (quoting *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)) (applying the Rule 59(e) standard).

**ANALYSIS**

I.   SBG's profits attributable to infringement

In its June 29, 2016, opinion, the court explained the burden-shifting framework that applies to a claim for profit damages. The court continues to believe that, under that scheme, CB

2

and Schreiber have failed to offer nonspeculative evidence of a causal link between SBG's use of the Style Guide and the company's profits.

In *Dash*, the Fourth Circuit said that a plaintiff (or counterclaimant) must prove the existence of a "causal link between the infringement and the *level* of the [defendant's] revenues." 731 F.3d 303, 330 (4th Cir. 2013) (alteration in original) (emphasis added) (citation omitted). The plaintiff must provide this proof before the burden shifts to the defendant to show that any revenues are not actually attributable to infringement. *Id.* at 330. In the portion of the *Dash* opinion addressing whether the plaintiff in that case presented sufficient evidence to establish a causal link, the Fourth Circuit noted several times that he had not shown that the infringement *increased* the defendants' revenues. *See id.* at 332. Most explicitly, in footnote 18 of the *Dash* opinion, the Fourth Circuit disagreed with the plaintiff's contention that he was not required to show that the alleged infringement increased the revenue streams. *Id.* at 332 n.18.[2] Accordingly, as stated in the court's June 29 opinion, CB and Schreiber were required to show that any infringement of the Style Guide increased SBG's advertising revenues.

In the alternative, the counterclaimants argue that they in fact have demonstrated that SBG's revenues increased after receiving the Style Guide. They point, in particular, to Exhibit JJ to their response in opposition to the motion for summary judgment. (*See* Mot. Recons. Mem. Law 4, 4 n.6, 11 n.9, 14-15, 15 n.14, ECF No. 79-1.) In the counterclaimants' own words, however, that chart represented "the gross advertising revenue generated from the sale of advertising time slots . . . for each station that received a copy of the Style Guide, *for the time period during which it had the Style Guide*." (Resp. Opp'n Mot. Summ. J. 35, ECF No. 58

---

[2] The Fourth Circuit's holding in *Bouchat v. Baltimore Ravens Football Club, Inc.*, is not to the contrary. 346 F.3d 514 (4th Cir. 2003). The *Bouchat* Court held that the plaintiff could not recover profit damages *both* because he had not shown a nonspeculative causal link between the infringement and the level of revenue, and because the defendants provided unrebutted evidence that the claimed revenues were entirely attributable to factors other than the infringement. *Id.* at 524; *see also Dash*, 731 F.3d at 328.

(emphasis added) (footnote omitted).) The exhibit identified the revenues "from each quarter that the station *possessed* the Style Guide." (*Id.* at 36 n.26 (emphasis added).) Exhibit JJ was not provided in order to show—and does not show—any comparative increase in advertising revenues experienced by SBG-affiliated stations after the Style Guide was in their possession, as it does not identify advertising revenues from quarters before the stations received the Style Guide. Further, of the thirty-seven stations the counterclaimants identify as experiencing an increase in advertising revenues *while* they were in possession of the Style Guide, only six of the local newscasts—WCHS, WVAH, WICS/WICD, KMYU, KABB, and WOAI—showed revenues that never dropped below the amount earned in the second quarter of 2013, when those stations received the Style Guide, and only three of those stations—WCHS, WVAH, and KABB[3]—showed a consistent increase in revenues between the second quarters of 2013 and 2014. Neither the general testimony of Brian Greif,[4] who does not reference Exhibit JJ, nor the testimony of Livingston[5] and SBG Chief Accounting Officer David Bochenek,[6] explaining the importance of having newscasters who look professional, is sufficiently concrete to show that "the infringement could *reasonably* be viewed as one of the causes of the claimed revenues." *Dash*, 731 F.3d at 331 (emphasis added). Accordingly, CB and Schreiber have not presented nonspeculative evidence of a causal link between possession of the Style Guide and an increase in SBG's advertising revenues.

---

[3] And WCHS's and WVAH's advertising revenues for each quarter in 2013 and 2014, respectively, are identical, suggesting that the stations averaged their annual advertising revenues.

[4] (*See* Resp. Opp'n Mot. Summ. J. Ex. G, Greif Aff. ¶¶ 10, 12, ECF No. 58-7 (noting that the "appearance and performance" and "social affinity" of on-air talent, among other factors, can contribute to an increase in a newscast's ratings).)

[5] (*See id.* Ex. B, Livingston Dep. 63:11-22, ECF No. 58-2 (noting that the appearance of on-air talent is a factor in maintaining viewership and making for a talented newscaster); *see also id.* at 66:19-68:5.)

[6] (*See id.* Ex. F, Bochenek Dep. 85:6-86:4, ECF No. 58-6 (noting that the appearance of news talent is a factor important to gross revenue).)

Finally, CB and Schreiber request that the court certify the issue for immediate appeal to the Fourth Circuit. Although 28 U.S.C. § 1292(b) permits certification for interlocutory review of non-final orders, its application is reserved for "exceptional circumstances [that] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) (quoting *Fisons, Ltd. v. United States*, 458 F.2d 1241, 1248 (7th Cir. 1972)). Certification of an interlocutory appeal under § 1292(b) is only appropriate where "(1) the order to be appealed involves a controlling question of law; (2) there is substantial ground for difference of opinion on that question of law; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 741 (D. Md. 2003).

For the reasons stated above, the court does not believe there is substantial ground for a difference of opinion on whether CB and Schreiber are entitled to SBG's profit damages,[7] nor does it believe that any other "exceptional circumstances" exist to justify postponing appellate review until after the entry of a final judgment. Accordingly, the court declines to certify its ruling granting the counter-defendants' motion for summary judgment on the counterclaimants' entitlement to SBG's profits.

II.   Fraudulent inducement

CB and Schreiber alleged that SBG, through Livingston, induced CB to create and deliver the Style Guide by making false statements about a group consulting deal. They argue in their motion for reconsideration that the timeline for hiring Dinges as SBG's internal image

---

[7] To support their request for certification, CB and Schreiber cite to *Mackie v. Reiser*, 296 F.3d 909 (9th Cir. 2002), and *Andreas v. Volkswagen of Am., Inc.*, 336 F.3d 789 (8th Cir. 2003), to argue that there is a circuit split among U.S. Courts of Appeals regarding whether the counterclaimants should have to show nonspeculative evidence of a causal link between possession of the Style Guide and an *increase* in SBG's advertising revenues. In *Bouchat* and *Dash*, however, both of which were published after *Mackie* and *Andreas* were issued, the Fourth Circuit only cited, and cited favorably, to *Mackie. See Dash*, 731 F.3d at 327, 330, 332 n.18; *Bouchat*, 346 F.3d at 521. And in *Mackie*, the Ninth Circuit noted that the plaintiff had failed to offer nonspeculative evidence of "a link between the infringement and the [defendant's] supposedly enhanced revenues." 296 F.3d at 911.

consultant demonstrates that Livingston was aware SBG would not need CB's services even as he continued to string Schreiber along. (Mem. Law 18-19.) As an initial matter, the counterclaimants improperly rehearse arguments they previously asserted and this court previously rejected. *See Tepeyac*, 5 F. Supp. 3d at 770. Further, the court continues to believe that, especially under the clear and convincing standard, there is not enough evidence to support the conclusion that Livingston made a false representation with the deliberate intent to deceive. Even if that were not the case, however, CB and Schreiber have not explained how the timeline of Dinges's hiring would affect the court's finding that Schreiber did not justifiably rely on any false representations Livingston may have made. In the June 29 opinion, I noted that, even under her version of events, Schreiber can point to only one conversation where Livingston allegedly promised a group deal and that additional licenses of the Style Guide would be purchased through CB. The other evidence in the record—such as Schreiber's awareness as early as February 2013 that a group deal would have to be approved by someone other than Livingston, (Mot. Summ. J. Ex. 15, ECF No. 53-16), a fact that was reiterated in early April, (*id.* Ex. 27, ECF No. 53-28), and that no particular offer terms were ever reduced to writing—suggests that the parties never reached an agreement. Even if Livingston knew more than he conveyed to Schreiber, Schreiber still had very little on which to base any reliance that CB and SBG had agreed to a group deal.

In the alternative, CB and Schreiber request the entry of a Rule 54(b) final judgment on the fraudulent inducement claim. Federal Rule of Civil Procedure 54(b) "permits a district court to enter final judgment as to one or more but fewer than all claims in a multiclaim action, thus allowing an appeal on fewer than all claims in a multiclaim action." *Braswell Shipyards, Inc. v. Beazer East, Inc.*, 2 F.3d 1331, 1335 (4th Cir. 1993). It is "the exception rather than the norm,"

and the burden is on the party seeking Rule 54(b) certification. *Id.* The Supreme Court has

outlined a two-part test for determining whether a Rule 54(b) certification is warranted. A district

court first must determine whether the judgment is final. *See Curtiss-Wright Corp. v. Gen. Elec.*

*Co.*, 446 U.S. 1, 7 (1980). Second, "the district court must go on to determine whether there is

any just reason for delay." *Id.* at 8. Relevant factors for determining whether there is any just

reason for delay include:

> (1) the relationship between the adjudicated and unadjudicated claims; (2) the
> possibility that the need for review might or might not be mooted by future
> developments in the district court; (3) the possibility that the reviewing court
> might be obliged to consider the same issue a second time; (4) the presence or
> absence of a claim or counterclaim which could result in a set-off against the
> judgment sought to be made final; (5) miscellaneous factors such as delay,
> economic and solvency considerations, shortening the time of trial, frivolity of
> competing claims, expense, and the like.

*Braswell Shipyards*, 2 F.3d at 1335-36 (quoting *Allis-Chalmers Corp. v. Phila. Elec. Co.*, 521

F.2d 360, 364 (3d Cir. 1975)). Here, the court's grant of summary judgment in favor of SBG on

the fraudulent inducement claim is a final judgment. CB and Schreiber, however, fail to show

that this case warrants Rule 54(b) certification: all of their claims arise out of the same set of

facts, and a Rule 54(b) certification could result in the Fourth Circuit being asked to consider

these facts more than once. According to the counterclaimants, the "most compelling factor"

supporting an immediate appeal of the court's decision is the fraudulent inducement claim's

relationship to SBG's claim that it possessed an implied license. (Mem. Law 20.) It is true that,

"[i]f an appeal must wait until after trial, there is a risk that a second trial would be necessary in

the event the Fourth Circuit reverses the summary judgment ruling on the fraud claim." (*Id.* at

21.) This argument, however, is a red herring, as it would hold true for any summary judgment

ruling that the counterclaimants appeal and the Fourth Circuit reverses. Further, although they

will not be permitted to allege fraudulent inducement, the counterclaimants still will be allowed

to argue about the scope of any implied license, and whether SBG breached the terms of such license. (*See* Resp. Opp'n Mot. Summ. J. 29-31.) To make this argument, CB and Schreiber will not be precluded from introducing evidence, including about whether the parties agreed to a group deal, that also would have supported their fraudulent inducement claim.

## CONCLUSION

For the reasons stated above, the motion for reconsideration, including the counterclaimants' requests for alternative relief, will be denied. A separate order follows.


March  2, 2017
Date

/S/
Catherine C. Blake
United States District Judge